Sheryl **HARVEY**, Plaintiff,

v.

**STANDARD INSURANCE COMPANY,** Defendant.

No. 4:10–CV–3230–VEH.

United States District Court, N.D. Alabama, Middle Division.

Sept. 15, 2011.

---

Myron K. Allenstein, Rose Marie Allenstein, Allenstein & Allenstein LLC, Gadsden, AL, for Plaintiff.

Briana M. Montminy, Burr & Forman LLP, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

VIRGINIA EMERSON HOPKINS, District Judge.

Before the Court is the Plaintiff's contested Motion to Compel (Doc. 32) filed July 26, 2011. Plaintiff Sheryl Harvey ("Ms. Harvey") seeks to compel production of two of the Defendant's internal documents that allegedly contain legal advice. Ms. Harvey argues that the documents are excluded from protection by the fiduciary exception to attorney-client privilege or are otherwise not privileged. Defendant Standard Insurance Company ("Standard") filed a response in opposition on August 15, 2011, contesting production based on attorney-client privilege and work-product privilege. (Doc. 35).

By previous Order, the Court required Standard to produce the withheld documents for *in camera* review. (Doc. 36). The Court has received and reviewed the contested documents; therefore, the Motion to Compel is now ripe for decision.

### I. *Introduction* [1]

At the outset, the Court notes that the burden rests with a party claiming privilege to demonstrate the applicability of the asserted privilege to a particular communication or item. *Solis v. Food Employers Labor Relations Ass'n,* 644 F.3d 221, 232 (4th Cir. 2011) ("As in the case of attorney-client privilege, the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine." (citation omitted)); *accord Hope for Families & Cmty. Serv., Inc. v. Warren,* No. 3:06–CV–1113–WKW, 2009 WL 1066525, at *9 (M.D.Ala. Apr. 21, 2009); *Freiermuth v. PPG Indus., Inc.,* 218 F.R.D. 694, 700 (N.D.Ala.2003). Because the two types of privilege raised by Standard implicate different case law and legal analysis, however, the Court will take each up in turn.

### II. *Attorney–Client Privilege*

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. United States,* 516 F.3d 1235, 1262 (11th Cir.2008) (quotation omitted). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir.1991). To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985) (emphasis in original).

The Supreme Court has broadly construed this privilege in support of the underlying policy "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Even so, the privilege is not without its exceptions.

### A. The Fiduciary Exception to the Attorney–Client Privilege

Under the common law, a familiar exception to the attorney-client privilege has developed where attorney communications involve fiduciaries. The so-called "fiduciary exception" provides that attorney-client communications may not be privileged when they involve legal advice rendered to fiduciaries in the execution of their fiduciary duties. *See generally* Charles F. Gibbs & Cindy D. Han-

---

1. The factual and procedural background of this ERISA case is fully set out in the Court's Order granting a previous Motion to Compel. (*See* Doc. 25). The standard of review governing ERISA claim decisions is also fully set out in the Court's previous Order; thus, the Court will not restate those sections herein.

son, *The Fiduciary Exception to a Trustee's Attorney/Client Privilege*, 21 ACTEC Notes 236 (1995). "The fiduciary exception is now well recognized in the jurisprudence of both federal and state courts, and has been applied in a wide variety of contexts, including in litigation involving common-law trusts, disputes between corporations and shareholders, and ERISA enforcement actions." *United States v. Jicarilla Apache Nation,* — U.S. —, 131 S.Ct. 2313, 2332–33, 180 L.Ed.2d 187 (2011) (Sotomayor, J., dissenting) (footnote and internal citations omitted). In the context of ERISA fiduciaries, the exception has been expressly recognized and persuasively applied by the Second, Fourth, Fifth, Seventh, and Ninth Circuit Courts of Appeal.[2] Although the Eleventh Circuit has yet to address the issue, several district courts in the circuit also have persuasively recognized the fiduciary exception as applied to ERISA fiduciaries.[3] *See, e.g., Moore v. Metropolitan Life Ins. Co.,* — F.Supp. —, —, Civil Action No. 2:11–cv–170–MHT–CSC, Doc. 54 at 11 (M.D.Ala., July 13, 2011) (applying fiduciary exception and granting plaintiff's motion to compel four documents listed on the defendant's privilege log); *Maltby v. Absolut Spirits Co.,* No. 08–80628–CIV, 2009 WL 800142, at \*3 (S.D.Fla. Mar. 25, 2009) (expressing court's willingness to apply fiduciary exception in context of an ERISA action upon *in camera* review to determine whether the documents were subject to that exception).

Courts that apply the fiduciary exception in the ERISA context reason have done so using two rationales: one derived from the ERISA trustee's duty to disclose; and the other based on the notion that the ERISA trustee is not the real client of the attorney. *See Smith v. Jefferson Pilot Financial Ins. Co.,* 245 F.R.D. 45, 48 (D.Mass.2007) (explaining two lines of reasoning). The "duty to disclose" line of reasoning is based on an ERISA fiduciary's obligation "to provide full and accurate information to the plan beneficiaries regarding the administration of the plan." *Becher,* 129 F.3d at 271–72. This obligation includes, if requested, "any communications with an attorney that are intended to assist in the administration of the plan." *Id.* The underlying theory to this approach is that "the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty." *Bland,* 401 F.3d at 787.

The "real client" line of reasoning emphasizes the role of the ERISA trustee. *See Mett,* 178 F.3d at 1063. "Other courts have focused instead on the role of the trustee and have endorsed the notion that, 'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" *Id.* (quoting *United States v. Evans,* 796 F.2d 264, 266 (9th Cir. 1986)). Under that approach, "[w]hen an

2. *See, e.g., Solis,* 644 F.3d at 228 ("[T]he fiduciary exception to attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration."); *Bland v. Fiatallis N. Am., Inc.,* 401 F.3d 779, 787–88 (7th Cir.2005) (recognizing fiduciary exception in ERISA context when fiduciary "undertakes plan management or administration"); *United States v. Mett,* 178 F.3d 1058, 1063 (9th Cir.1999) ("As applied in the ERISA context, the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." (quotation and citation omitted)); *Becher v. Long Island Lighting Co.,* 129 F.3d 268, 271–72 (2d Cir.1997) ("An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan."); *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 645 (5th Cir. 1992) (recognizing fiduciary exception but find-

ing it did not apply to communications that were "made for the purpose of defending the pending lawsuit and did not deal with plan administration").

3. An ERISA fiduciary is defined by statute, which provides in relevant part: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Standard does not dispute that it is an ERISA fiduciary for purposes of this case. (*See* Doc. 35 at 4).

attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur*, 974 F.2d at 645; *accord Wash.-Baltimore Newspaper Guild, Local 35 v. Wash. Star Co.*, 543 F.Supp. 906, 909 (D.D.C.1982). Thus, "[t]he very intention of the communication is to aid the beneficiaries" and the fiduciary "cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." *Wash. Star*, 543 F.Supp. at 909.

Under either approach, however, courts have determined that the fiduciary exception does not defeat attorney-client privilege with respect to communications between an ERISA fiduciary and its attorneys on *non*-fiduciary matters, such as litigation defense or other private interests. *Smith*, 245 F.R.D. at 48 ("In particular, courts have found that, '[w]hen an ERISA trustee seeks legal advice for his own protection, the legal fiction of trustee as representative of the beneficiaries is dispelled' and therefore the fiduciary exception is not applicable." (additional quotations and citation omitted)). Generally speaking, therefore, in the ERISA context the fiduciary exception only applies where the otherwise privileged communications concern plan administration, "including 'any communications with an attorney that are intended to assist in the administration of the plan.'" *Id.* (quoting *Long Island Lighting*, 129 F.3d at 271–72); *see also Solis*, 644 F.3d 221 at 228 ("[T]he fiduciary exception to attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration.").

■ To determine whether a particular attorney-client communication concerns a matter of plan administration as opposed to legal advice for the fiduciary's own benefit, "courts engage in a fact-specific inquiry, examining both the content and context of the specific communication. Frequently, the key question is whether the communication was made before or after the final decision to deny benefits." *Asuncion v. Metro. Life Ins. Co.*, 493 F.Supp.2d 716, 720–21 (S.D.N.Y. 2007) (quotations and citations omitted). After the challenged benefits determination occurs, "there should be little need for administrators to consult counsel regarding a specific benefits determination." *Id.* (quoting *Black v. Bowes*, No. 05 Civ. 108(GEL), 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006)). Thus, where the fiduciary exception applies in the ERISA context, it only covers "communications related to plan administration and [generally] not [ ] communications after a final decision." *Moss v. Unum Life Ins. Co.*, No. 5:09–CV–209, 2011 WL 321738, at *5 (W.D.Ky. Jan. 28, 2011).

Standard argues that, based on the Third Circuit's reasoning in *Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3d Cir.2007), this Court should not apply the fiduciary exception to it because it is an insurer. Standard also argues that the Supreme Court's recent decision *Jicarilla*, 131 S.Ct. at 2327, "cited with approval" *Wachtel*'s interpretation about why expansion of the fiduciary exception to ERISA fiduciaries is not justified. (Doc. 35 at 6 n. 3). However, Standard misreads *Wachtel*, which expressly did not reach[4] the issue that Standard says *Wachtel* stands for, most likely because the facts of *Wachtel*[5] could not be more different from the facts of this case, which is a typical ERISA failure to

4. The Third Circuit in *Wachtel* made clear the narrow scope of its opinion:

This appeal requires us to consider the application of a common-law evidentiary rule known as the "fiduciary exception" to the attorney-client privilege. Under this exception to the privilege, certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations are precluded from asserting the attorney-client privilege against their beneficiaries. Although the fiduciary exception has been adopted by a number of other federal courts of appeals, we have not yet had the opportunity to decide whether the rule should apply within our circuit. *We decline to make that decision*

*today* because we hold that, even if we were to adopt the fiduciary exception, the exception would not apply to the defendants in this case. For this reason, we will vacate the order of the District Court requiring the production of otherwise privileged attorney-client communications.

*Wachtel*, 482 F.3d at 226–27 (emphasis added).

5. The Third Circuit summarized the factual and procedural background as follows:

Health Net of New Jersey, Inc. (HN–NJ) sells and maintains health insurance policies for employee benefit plans. The company offers a

pay benefits case.[6] Further, *Jicarilla* arguably *supports* application of the fiduciary exception in ERISA contexts, *see id.* at 2322, 2332–33, and certainly does not alter or overrule the line of cases that have applied the fiduciary exception to ERISA fiduciaries, *see id.* at 2322, 2333 n. 1.[7]

■ Unlike the Third Circuit, this Court reaches the issue of application of the fiduciary exception to attorney-client privileged documents in ERISA fiduciary cases and agrees

variety of policies, covering services by health maintenance organizations, preferred provider organizations, and point-of-service policies. HN–NJ is a subsidiary of Health Net of the Northeast, Inc. (HN–NE). Health Net, Inc. (HNI) is the corporate parent not only of HN–NJ and HN–NE but also of other subsidiary insurance companies that provide medical benefits to participants in benefit plans established under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Although certain policy formulation and administrative services are shared among the Health Net companies, a subsidiary is responsible for deciding claims in accordance with these policies and for paying claims to participants from the subsidiary's assets. HNI and its subsidiaries do not hold or manage the assets of their customer benefit plans. Rather, the Health Net subsidiaries sell insurance policies to the plans. When a plan beneficiary submits a claim, the subsidiary will process the claim and, if appropriate, pay the beneficiary from the subsidiary's own funds. Similarly, when HNI or any of the subsidiaries obtains legal advice, counsel is paid from HNI's or the subsidiary's funds. *Neither HNI nor any of the subsidiaries is a plan administrator or trustee for any of the benefit plans.*

The plaintiffs are beneficiaries of two different employee benefit plans that purchased point-of-service policies from HN–NJ. Under the plaintiffs' policies, health care providers are classified as in-network or out-of-network. When beneficiaries obtain care from out-of-network providers, they must pay a higher share of the cost than they would had they obtained care from in-network providers. In determining what percentage of an out-of-network charge HN–NJ will pay, HN–NJ will look to the Usual, Customary, and Reasonable (UCR) charge for the service provided. In defining UCR charges, Health Net companies rely on data contained in certain national databases. The plaintiffs allege that HN–NJ relied on antiquated data and improper methods to define UCR charges, thereby violating both New Jersey law and the Health Net companies' duties as statutory fiduciaries under ERISA. The plaintiffs filed suit under § 502 of ERISA to recover benefits and to redress the alleged

with the reasoning of all the circuits which have spoken on the issue.[8] Accordingly, the Court finds that communications between and attorney and an ERISA plan administrator that solely concern ERISA plan administration are an exception to the general shield of attorney-client privilege.

## B. Application

■ The Court is mindful of the Ninth Circuit's guidance that "where attorney-

violations of fiduciary duties and failure to supply information to beneficiaries.
*Wachtel*, 482 F.3d at 227 (emphasis added). *Thus, the defendants in Wachtel, unlike Standard, did not function in the role of plan administrator.* This difference is key because the particular function of the Health Net defendants notably affected the Court's analysis. Observing that "ERISA fiduciaries ... come in many shapes and sizes, and we do not believe that the logic underlying the fiduciary exception applies equally to all," the Third Circuit emphasized the "significant differences [that] exist between insurance company fiduciaries such as HN–NJ and other ERISA fiduciaries to whom the fiduciary exception has been applied." *Id.* at 234.

6. Ms. Harvey is a plan participant in a short and long term disability benefits plan issued by Standard to her former employer, Jeff Owens & Associates, Inc. ("the Plan"). (Doc. 17–1). Standard admits that it "was the claims administrator responsible for evaluating and paying eligible claims" under the Plan (Doc. 11 at 3) and that "Standard served as the Administrator responsible for processing and evaluating disability claims made by participants and for construing the terms of the Group Policy." (Doc. 11 at 8 ¶ 5). This action involves Ms. Harvey's claims under 29 U.S.C. § 1132 for long term disability benefits under the Plan. (Doc. 1–1 ¶ 5).

7. In *Jicarilla*, the Supreme Court discussed the history of the fiduciary exception to the attorney-client privilege as it has developed in the common law, tracing its English roots and explaining its rationale. The issue before the Court was whether the fiduciary exception extended to the trust relationship between the United States and the Indian tribes. Ultimately, the majority of the Court determined that it did not. *Jicarilla*, 131 S.Ct. at 2330–31. In so holding, however, the Court did not purport to address or alter the fiduciary exception in other contexts, including ERISA (or ERISA involving insurance companies). To the contrary, the Court recognized the existence of the exception in the American court system by citing several of the cases from various Courts of Appeal that have recognized and applied the exception in the ERISA context. *See id.* at 2322 (citing *Solis*, 644 F.3d at 228; *Becher*, 129 F.3d at 271–72; *Wildbur*, 974 F.2d at 645).

8. *See supra* n. 2 (collecting cases).

client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *Mett*, 178 F.3d at 1065. This, however, is not a hard case.

■ Upon *in camera* review, the two documents sought by Ms. Harvey fall squarely within the scope of administrative review of Ms. Harvey's LTD claim because they only concern plan administration. In fact, the heading of both memos unambiguously states: "ADMINISTRATIVE REVIEW UNIT MEMO TO THE FILE." Drafted by Standard employee Darci Eisele, the memoranda merely note that Standard, pursuant to the advice of in-house counsel Tony Padilla, agreed to "perform an extra-contractual review" of Ms. Harvey's administrative claim file after her attorney, Myron Allenstein, requested an additional review. The first memorandum, dated August 16, 2010, states that Ms. Eisele should "accept [Mr. Allenstein's request] as a 2nd request for review" and "[c]ommunicate" to Mr. Allenstein that he would have the requested sixty (60) days within which to submit additional information. The second memorandum, dated June 9, 2010, memorializes Ms. Eisele's consultation with Mr. Padilla about what additional medical information had been received from Mr. Allenstein as of that date, that Mr. Allenstein "plans to submit a vocational report within 30 days, which will exceed [the] previously agreed upon 60–day time frame," and that Mr. Padilla advised Ms. Eisele to tell Mr. Allenstein "that [Standard] will agree to 30 [more] days ... but that no further extensions will be granted."

Standard seeks to avoid discovery of these documents by arguing that the date of the documents puts them outside the scope of Standard's administrative review of the claim file. (*See* Doc. 35 at 3, ¶ 7).[9] Specifically, Standard contends that "[b]oth of the documents listed on Standard's privilege [log] were created **after** March 15, 2010, which was after Plaintiff had exhausted her administrative remedies and **after** April 8, 2010[,] when Plaintiff had retained counsel." (*Id.*) (emphasis in original). This contention is contradicted by Standard's admission (in the previous paragraph of its brief and in the documents at issue) that, on April 8, 2010, it elected to conduct an additional administrative appeal although it "was under no statutory or contractual duty to do so." (*Id.* ¶ 6).

Regardless of whether any statutory or contractual obligation *required* Standard's continued review, Standard indisputably *elected* to conduct an additional administrative review that was ongoing as of the dates of the two disputed documents. Even without the contested documents, the administrative record unambiguously demonstrates that Standard's additional review of Ms. Harvey's claims continued well into the fall of 2010.[10] Standard therefore cannot argue in good faith that Ms. Harvey's claim file was administratively closed on March 15, 2010. Moreover, the very documents Standard seeks to withhold reveal the continuing nature of Standard's administrative review, showing that Standard agreed to extend its administrative review of Ms. Harvey's claims under the Plan until July 3, 2010.

Any documents created solely for administrative purposes during the administrative review process as extended by Standard are discoverable as part of the administrative record despite Standard's assertion of attorney-client privilege. Such information is relevant and proper for the Court to consider

---

9. While Standard agrees that the fiduciary exception, where recognized, generally applies to communications relating to plan administration, *see* Doc. 35 at 9, it does not explain why the *contents* of the documents Ms. Harvey seeks to compel Standard to produce relate to anything other than plan administration. Instead, Standard hinges its argument on the date of the documents. As explained further herein, however, the Court's review of these documents establishes without doubt that the documents relate only to plan administration and were created while Standard's second review of Ms. Harvey's claim was ongoing.

10. *See, e.g.,* September 14, 2010, letter of Darci Eisele, Senior Benefits Review Specialist for The Standard, to Myron K. Allenstein, counsel for Sheryl Harvey (Standard 000359) ("As of the date of this letter, the Administrative Review Unit's review [of Claim No. 00VH6402] *remains in progress.* However, we expect to complete our review prior to October 15, 2010[,] and will endeavor to complete our review as soon as possible." (emphasis added)).

when ruling on the pending motions for summary judgment. Unlike *Moss,* where the court recognized attorney-client privilege because the withheld documents contained legal advice concerning the pending lawsuit, the contents of the documents withheld in this case *only* concern plan administration. *Moss,* 2011 WL 321738, at *5. Therefore, the Court finds that the fiduciary exception applies and these documents are not protected by the attorney-client privilege.

### III. The Work–Product Doctrine

As a separate and independent basis for challenging Ms. Harvey's motion to compel the two documents at issue, Standard asserts the work-product doctrine. (Doc. 35 at 11–13). Standard urges that the work-product privilege is both "distinct from" and "broader than" the attorney-client privilege, citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979).[11] The work-product privilege is a common law privilege, like the attorney-client privilege, that has been recognized in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 26(b)(3)(A) (providing that certain materials created in the course of trial preparation are non-discoverable). Rule 26(b) provides in relevant part:

(3) *Trial Preparation: Materials.*

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). . . .

*Id.* The rule further provides that "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* This rule traces its roots to the Supreme Court case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), in which the Court held that written material and mental impressions prepared or formed by an attorney in the course of performing legal duties on behalf of a client were protected from discovery as the attorney's "work product" in the absence of undue prejudice or hardship to the party seeking discovery. *Id.* at 511, 67 S.Ct. 385.

The Court finds that the memoranda at issue were not prepared in anticipation of litigation; rather, they were prepared as part of Standard's administrative review of Ms. Harvey's claim. Although the documents summarize advice Ms. Eisele received from in-house counsel, they clearly were prepared for the purpose of further administrative review regarding Standard's decision to again review Ms. Harvey's administrative claim file. Standard makes no argument, nor could it, that the memoranda at issue were prepared in response to, or in anticipation of, litigation, *because Standard had not yet finally determined Ms. Harvey's claim.* Moreover, the contents of the memoranda speak for themselves, as they do not contain any references to pending or future litigation. Further, both documents contain directions from Standard's in-house counsel as to what the recipient *should communicate to Ms. Harvey's attorney.* They do not in any manner reveal any facts developed by Standard's in-house counsel, nor do they reveal such counsel's thought processes, legal opinions, or litigation strategy. Thus, the documents are not work product.

In light of the Court's finding that documents are not work product, the Court need not reach the issue raised of whether the fiduciary exception applies to the work-product doctrine. To clarify some apparent confusion, however, the Court addresses this issue as an alternative ground for finding that the work-product doctrine does not serve to protect the documents that Ms. Harvey seeks to produce in this matter.

Standard argues that the work-product doctrine is not subject to the fiduciary exception to the attorney-client privilege. Standard relies on *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1423 (11th

---

11. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

Cir.1994), *modified on other grounds by* 30 F.3d 1347 (11th Cir.1994), for the proposition that "the Eleventh Circuit has already explicitly rejected the application of the fiduciary exception to the work product doctrine." (Doc. 35 at 13). However, *Cox* was not an ERISA case; it involved union members disputing a collective bargaining agreement that governed operations at a steel mill. *Id.* at 1392. In *Cox,* the Eleventh Circuit addressed the applicability of the work-product doctrine in the context of a discovery dispute involving documents produced by company attorneys and union attorneys. *Id.* at 1421. This Court does not read *Cox* to hold that the Eleventh Circuit has rejected application of the fiduciary exception to the work product doctrine in the context of ERISA cases. *Accord Moore,* —— F.Supp. at ——, 2:11–cv–170–MHT–CSC, Doc. 54 at 3.[12]

■ Although the Eleventh Circuit has not yet addressed whether the fiduciary exception applies to documents that are work product, other courts, even within this circuit, have persuasively held that the fiduciary exception in context of the work-product doctrine functions with similar application as it does in the context of the attorney-client privilege in ERISA cases. *See Maltby,* 2009 WL 800142, at *3. "The full and fair review exemption to the work product doctrine requires a fiduciary who denies a claim for benefits to afford the beneficiary an opportunity for a full and fair review of the decision denying the claim, and this review includes the right to review all documents relevant to the claims administration process." *Id.* (citing *Anderson v. Sotheby's, Inc.,* No. 04 Civ. 8180(SAS), 2006 WL 2637535, at *4 (S.D.N.Y. Sept. 11, 2006) ("[I]f the work-product doctrine protected these documents, then no ERISA plan beneficiary could ever obtain discovery into the records of an Administrator's investigations of the claim because an administrator could almost always claim that it anticipated possible litigation.")). Like-

wise, this Court agrees that the fiduciary exception also applies to work product that was created solely as part of ERISA claims administration.

Alternatively, therefore, the Court finds that even if the particular documents Standard seeks to withhold somehow qualified as work product, they would nevertheless be subject to the fiduciary exception in this case because they were prepared *solely* as part of ERISA claims administration, that is, for business purposes as opposed to litigation reasons. *Cf. Moss,* 2011 WL 321738, at *5 (declining to apply fiduciary exception where "[n]one of the documents concern administration of the plan; rather ... the withheld communications concern the pending lawsuit.").

## IV. *Conclusion*

In conclusion, the Court finds that the documents at issue relate solely to ERISA claims administration. Thus, although they contain attorney-client privileged communications, those communications fall within the fiduciary exception to that privilege. Further, the Court finds that the documents are not work product and alternatively finds that, even if they were work product, they are not privileged because the fiduciary exception also applies to work product that was created solely as part of ERISA claims administration.

Therefore, the Court **GRANTS** the Plaintiff's motion to compel (Doc. 32). Standard is hereby **ORDERED** to provide the documents to Ms. Harvey's counsel no later than September 23, 2011.

12. In *Moore,* Magistrate Judge Coody explained that although *Cox* "is sometimes cited as holding the attorney-client privilege does not apply with respect to communications made to certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations," the decision involved application of the privilege doctrine in context of the union's assertion of the privilege against its members. *Id.* Therefore, "the *Cox* decision does not contain any holding about the extent of the fiduciary exception in other contexts." *Id.* This Court agrees and finds that *Cox* does not apply to the facts and circumstances of this case.